UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID MCFERRIN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> OLD REPUBLIC TITLE, LTD., et al., <br><br> Defendants. | CASE NO. C08-5309BHS <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' EARNING CREDITS CLAIMS AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' RECONVEYANCE FEE CLAIMS |

This matter comes before the Court on Defendant Old Republic Title's Motion for Partial Summary Judgment on Plaintiffs' Earnings Credits Claims (Dkt. 54) and Motion for Partial Summary Judgment on Reconveyance Fee Claims (Dkt. 55). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants the motions for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On May 14, 2008, Plaintiffs David and Katherine McFerrin filed a class action complaint alleging that Defendants Old Republblic Title, Ltd., and Old Republic National Title Insurance Company had breached contracts; had violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617; had violated the consumer protection statutes of 35 states and the District of Columbia; were unjustly enriched; had breached fiduciary duties; and had breached agent duties. Dkt. 1.

ORDER - 1

On October 17, 2008, Plaintiffs filed an amended complaint and added named Plaintiffs Koos J. and Cynthia L. Jager. Dkt. 19. Plaintiffs alleged that there were two classes: (1) the Reconveyance Scheme Class and (2) the Earning Credit Scheme Class. *Id*. at 29-30. With regard to the asserted claims, Plaintiffs altered their consumer protection claim by alleging that Defendants had violated only the Washington Consumer Protection Act, Chapter 19.86 RCW. *Id*. at 38-39.

On March 3, 2009, Defendant Old Republic Title filed a Third-Party Complaint against Third-Party Defendants Reconveyance Services, Inc., Troy X. Kelly, and Diane Duffrin Kelley. Dkt. 33.

On March 26, 2009, Plaintiffs filed a Second Amended Complaint. Dkt. 42 ("Complaint"). In this complaint, Plaintiffs updated their factual allegations and legal theories in light of certain discovery. *See* Dkt. 35 at 1-2.

On April 16, 2009, Defendant and Third-Party Plaintiff Old Republic Title ("Defendant") filed a Motion for Partial Summary Judgment on Plaintiffs' Earnings Credits Claims (Dkt. 54) and a Motion for Partial Summary Judgment on Reconveyance Fee Claims (Dkt. 55). On May 4, 2009, Plaintiffs responded (Dkts. 77 and 78) and Third-Party Defendants responded (Dkts. 74 and 75). On May 8, 2009, Defendant replied. Dkts. 82 and 83.

On April 28, 2009, the parties stipulated to the dismissal of the original Plaintiffs, Mr. and Mrs. McFerrin. Dkt. 68. Thus, the pending motions are based on only the Jagers' transaction.

## II. FACTUAL BACKGROUND

**A.  The Parties' Relationship**

On April 8, 2008, Plaintiffs Koos and Cindy Jager ("Plaintiffs") retained Defendant to provide escrow services for the sale of their Seattle home. Dkt. 56, Declaration of Patricia LeVeck ("LeVeck Decl."), ¶ 31.

ORDER - 2

On April 11, 2008, Plaintiffs signed a number of closing documents, including: (1) Defendant's Closing Agreement and Escrow Instructions for Purchase and Sale Transactions (*Id.*, Exh. M); (2) a Supplement to Closing Agreement and Escrow Instructions for Purchase and Sale Transactions Including Instructions to Record Documents and Disburse Funds (*Id.*, Exh. N); and (3) a HUD-1 Settlement Statement (*Id.*, Exh. O). The escrow instructions provide, in part, as follows:

> **Documents**. The closing agent is instructed to select, prepare, receive, hold, record and deliver documents as necessary to close the transaction . . . .
>
> \*\*\*
>
> **Closing Agent's Fees and Expenses**. The closing agent's fee is intended as compensation for the services set forth in these instructions. If additional services are required to comply with any change or addition to the parties' agreement or these instructions, or as a result of any party's assignment of interest or delay in performance, the parties agree to pay a reasonable additional fee for such services. The parties shall also reimburse the closing agent for any out-of-pocket costs and expenses incurred by it under these instructions . . . .

*Id.*, Exh. M.

The supplement to the escrow instructions provides, in part, as follows:

> **Settlement Statement Approved.** The settlement statement prepared by the closing agent is approved by me and made a part of these instruction by this reference. I agree to pay my costs expenses and other obligation itemized on the statement. I understand that any estimated amounts will be adjusted to reflect exact amounts required when the funds are disbursed, that the settlement statement continues to be subject to audit at any time, and if any monetary error is found, the amount will be paid by the party liable for such payment to the party entitled to receive it.
>
> \*\*\*
>
> **Instructions to Close**. The closing agent is authorized to perform its customary closing duties under these instructions, to deliver and record documents according to these instructions, and to disburse the funds according to the settlement statement, adjusting estimated amounts, when the closing agent has the documents required to close the transaction and has, or will obtain when the documents have been delivered and recorded . . . .

*Id.*, Exh. N.

The HUD-1 document disclosed a $300 reduction in the amount due to Plaintiffs because of a "reconveyance fee to The Post Closing Dept." *Id.*, Exh. O, pg. 1 at ln. 507. Plaintiffs claim that they asked their escrow agent why they would be charged this fee and that the agent responded that the fee was just part of the process. *See* Dkt. 58,

ORDER - 3

Declaration of Gavin Skok ("Skok Decl."), Ex. A (K. Jager deposition) at 31:14 - 33:11; Ex. M (C. Jager deposition) at 14:18 - 16:20.

**B.     The Transaction**

On April 15, 2008, Plaintiffs' transaction closed. LeVeck Decl., ¶ 30. Prior to closing, Plaintiffs had two deeds of trust on their home; one deed was in favor of First Horizon Home Loans to secure a first mortgage, and the other deed was in favor of First Tennessee/First Horizon to secure a home equity line of credit. *Id*. It is undisputed that, once these deeds were paid in full, the property title needed to be reconveyed back to the original borrower.[1] It is also undisputed that the original lenders, First Horizon Bank and First Tennessee Bank, performed the reconveyances. *Id*., Exhs. T and U.

Defendant claims that "[t]he entire amounts collected from Plaintiffs at closing were remitted to the third-party vendors under contract with Old Republic to perform post-closing reconveyance services." LeVeck Decl., ¶ 18. Defendant also claims that for Plaintiffs' transaction it used Third-Party Defendant Troy Kelley as "The Post Closing Department." *Id*., ¶ 14. The record is silent as to whether Mr. Kelly ever made a payment to either First Horizon Bank or First Tennessee Bank. Plaintiffs claim that, because their original lenders performed the reconveyances, they should have received a refund of the $300 that they paid for post-closing reconveyance services. Dkt. 81, Declaration of Cindy L. Jager, ¶ 2.

**C.     Earnings Credits**

Defendant claims that it "ordinarily deposits all funds it receives in connection with real estate transactions" into an Interest on Lawyers Trust Account ("IOLTA"). Dkt. 56, Declaration of Robin Kernutt ("Kernutt Decl."), ¶ 5. Although Defendant does not

---

[1] In its opening brief, Defendant provides a lengthy description of the reconveyance process as well as the need for the process in real estate transactions. *See* Dkt. 55 at 3-6.

ORDER - 4

receive the accrued interest on this account[2], it does receive "earnings credits" from its bank. *Id*., ¶ 11. These credits are used to either fully or partially offset certain bank service charges that are incurred by Defendant. *Id*., ¶ 12.

Plaintiffs allege that Defendant's financial structure and receipt of earnings credits constitute an "Earnings Credit Scheme." Complaint, ¶¶ 107-113. With regard to Plaintiffs' transaction, the allegations are as follows:

> The Jagers did not receive any share of the earnings credits, investment line of credit income or other benefits that Defendant received as a result of the pooling of the Jagers' funds with the funds of other escrow principals. Further, while the Jagers were entitled to the proceeds from the sale from the moment that the buyer's funds were paid into the escrow account, they did not receive any of the earnings credits, investment line of credit income or other benefits that Defendant received as a result of the post-close Float on the loan proceeds.
> The Jagers did not receive any disclosure that Defendant would pool their funds and Float, with the funds and Float of other escrow principals, nor that Defendant receives earnings credits, investment lines of credit income or other benefits based on the amount of those pooled funds.
> As a result of Defendant's illegal, unfair and deceptive receipt of earnings credits, investment lines of credit and other benefits from the banks holding its escrow accounts, the Jagers and the Earnings Credit Class have been monetarily and financially harmed in an amount at least equal to the benefits received by Defendant (and earnings thereon) and the illegally, unfairly and deceptively collected escrow fees paid to Defendant and unknowingly tendered by the Jagers and the Earnings Credit Class. In addition, Plaintiffs and the Earnings Credit Class have been directly harmed by having had to pay a wire service fee to [Defendant] as a purported reimbursement of out-of-pocket expenses when, in fact, any fees for wire transfers were not paid by [Defendant] as a result of the receipt of earnings credits from [Defendant's] banks.

Complaint, ¶¶ 84-86.

Defendant claims that its earnings credits "uniquely result from its relationship with its bank." Kernutt Decl., ¶ 17. Specifically, it claims that the "[e]arnings credits are not available to individual customers, and would not be available to [its] escrow customers if they deposited funds directly with [Defendant's] bank." *Id*.

---

[2] Defendant's bank sends the interest earned on this account to the Legal Foundation of Washington. Kernutt Decl., ¶ 10.

ORDER - 5

### III. DISCUSSION

**A. Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific

statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B. Reconveyance Fee Claims**

Defendant moves for summary judgment on Plaintiffs' claim for breach of contract (Count I), claim for breach of fiduciary duty (Count V), and claim for breach of agency duty (Count VI).

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

**1.    Breach of Contract**

As the Washington Supreme Court has noted, courts asked to enforce a contract may be called upon to either construct or interpret a contract's terms. *Berg v. Hudesman*, 115 Wn.2d 657, 663 (1990). Contract construction requires the court to determine the legal consequences that flow from a contract's terms. *Id*. Contract interpretation requires the court to determine the meaning of a contract term and the parties' intentions. *Id*.   In this case, Defendant has moved for summary judgment on all three of Plaintiffs' theories that Defendant breached the escrow contract.

**a.    Collection of the Reconveyance Fee**

Plaintiffs allege that:

> Defendant breached the Escrow Contracts by charging "reconveyance processing fees" in addition to the escrow fees because Defendant was obligated to perform any required reconveyance in exchange for its escrow fee. Defendant was not authorized to collect an additional reconveyance fee because the reconveyance fee was neither an additional service caused by changed circumstances, nor was the reconveyance fee charged to Plaintiffs and the Reconveyance Class a reimbursement of an out-of-pocket cost or expense incurred by Defendant. Defendant breached the contract by collecting reconveyance fees in addition to its escrow fees.

Complaint, ¶ 143.

It is undisputed that Plaintiffs agreed to pay the expenses and obligations that were itemized on the HUD-1 settlement statement. *See* LeVeck Decl., Exhs. M, N, and O. It is

also undisputed that the HUD-1 statement explicitly disclosed the $300 reconveyance fee. Based on this contract and this disclosure, Defendant contends that it was authorized to collect the reconveyance fee and therefore it "cannot breach those contracts by collecting the very charges that Plaintiffs told [it] to collect." Dkt. 55 at 14.

On the other hand, Plaintiffs argue that the Court should interpret and construe the contract to impose certain obligations upon Defendant. Specifically, Plaintiffs argue that, under the contract, Defendant was either obligated to perform the reconveyances or ensure that they were completed and that Defendant collected the escrow fee for that service. First, there are no facts before the Court that would support this interpretation of the escrow instructions. To the contrary, the facts show that Defendant not only disclosed the $300 reconveyance fee but also informed Plaintiffs that this fee to the Post Closing Department was a necessary part of the transaction. Therefore, Plaintiffs have failed to show that there exists a question of material fact regarding the interpretation of the parties' contract and Defendant's obligation to either "perform" or "ensure" the reconveyance under the escrow instructions.

Second, with regard to the legal consequences that flow from these instructions, Plaintiffs have failed to show any specific provision of the contract that requires the Defendant to either perform or ensure the reconveyances. In Washington, there is no breach of contract when the alleged term that was breached is absent from the contract. *Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 12 (2004).

Therefore, the Court grants Defendant's motion for summary judgment on Plaintiffs' claim for breach of contract based on the collection of the reconveyance fee.

### b. Disclosure of Services

Plaintiffs allege that:

> Defendant also breached the Escrow Contracts by failing to disclose to Plaintiffs and the Reconveyance Class that Defendant had employed third parties to perform reconveyance services and that these fees were for no services rendered and that the actual reconveyance processing for Class members' loans would be performed by the prior lenders at no cost or for fees

ORDER - 8

separately paid by Plaintiffs and the Reconveyance Class in their loan payoffs.

Complaint, ¶ 145.

The escrow instructions explicitly state only that the "closing agent is instructed to select, prepare, receive, hold, record and deliver documents as necessary to close the transaction . . . ." LeVeck Decl., Exh. M at 1. Plaintiffs have not cited a specific provision in the escrow instructions that requires Defendant to disclose what Plaintiffs allege it should have disclosed. Therefore, as with the prior breach of contract theory, Plaintiffs have failed to show that Defendant breached a specific provision of the parties' contract. The Court grants Defendant's motion for summary judgment on Plaintiffs' claim that Defendant breached a contractual duty to disclose.

### c. Duty of Good Faith and Fair Dealing

There is an implied duty of good faith and fair dealing in every contract. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991). This duty obligates the parties to cooperate with one another so that each may obtain the full benefit of performance. *Metro. Park Dist. v. Griffith*, 106 Wn.2d 425, 437 (1986). However, the "implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations." *Johnson v. Yousoofian*, 84 Wn. App. 755, 762 (1996) (citing *Miller v. U.S. Bank of Washington, N.A.*, 72 Wn. App. 416, 426 n. 5 (1994)).

In this case, Plaintiffs have failed to show that Defendant had specific contract obligations to support their allegations of breach of contract. *See supra*. Therefore, without the specific obligations, there can be no breach of the implied duty of good faith and fair dealing. The Court grants Defendant's motion for summary judgment on Plaintiffs' claim for breach of the duty of good faith and fair dealing.

### 2. Fiduciary Duty and Duties of an Agent

In order to state a claim for breach of fiduciary duty a plaintiff must allege the following: (1) existence of a duty owed; (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach was the proximate cause of the injury. *Micro Enhancement*

*Int'l v. Coopers & Lybrand, Inc.*, 110 Wn. App. 412, 432 (2002). As escrow agent, Defendant has a fiduciary duty to its clients that is defined by the terms of their escrow instructions. *National Bank of Washington v. Equity Investors*, 81 Wn.2d 886, 910 (1973) (en banc); *Denaxas v. Standstone Court of Bellevue, LLC*, 148 Wn.2d 654, 663 (2003) (en banc).

In this case, Plaintiffs allege that Defendant breached its fiduciary duty as an escrow agent. Complaint, ¶¶ 167-170. Defendant moved for summary judgment arguing that it complied with the escrow instructions. Dkt. 82 at 10. The Court agrees as Plaintiffs have failed to cite a specific provision of those instructions that Defendant violated. *See supra*. Therefore, the Court grants Defendant's motion for summary judgment on Plaintiffs' claims for Defendant's breach of fiduciary duty and Defendant's breach of the duties of an agent.

**C. Earnings Credits Claims**

Defendant argues that the Court should grant it summary judgment on Plaintiffs' earnings credits claims because Plaintiffs do not have standing to bring these claims and, if they do have standing, Plaintiffs cannot establish a RESPA violation; breach of fidicuary duty, agency duty, or contract; violation of the Consumer Protection Act; or unjust enrichment. Dkt. 54 at 12-24. The Court will only address the issue of standing.

To satisfy Article III standing requirements, a plaintiff must show that: (1) plaintiff has suffered "injury in fact" that is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61). The plaintiff bears the burden of proof to establish standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

1  In this case, Defendant argues that "Plaintiffs have suffered no injury and have no
2  standing" because the "[e]arning credits arise solely as a result of [Defendant's]
3  relationship with its bank." Dkt. 54 at 13. Defendant relies on the Ninth Circuit's
4  opinion in *Washington Legal Foundation v. Legal Foundation of Washington*, 271 F.3d
5  835, 859-60 (9th Cir. 2001) (en banc), *aff'd sub nom. Brown*, 538 U.S. 216 (2003), and
6  multiple opinions that have been issued in this district on similar, if not identical, claims:
7  *Sypolt v. The Talon Group*, No. 07-1892 MJP (W.D. Wash. Feb. 26, 2009); *Cornelius, et
8  al., v. Fidelity Nat'l Title Co.*, No. C08-754 MJP (W.D. Wash. Mar 09, 2009); *Jankanish
9  and McFerrin v. First American Title Ins. Co.*, No. C08- 1147 MJP (W.D. Wash. Mar.
10 23, 2009); *Contos v. Wells Fargo Escrow Co.*, No. C08-838 TSZ (W.D. Wash. May 20,
11 2009).

On the other hand, Plaintiffs argue that "the customers have standing to sue to recover the benefits earned on [their] money." Dkt. 78 at 15. Plaintiffs attempt to distinguish the cases cited above by arguing that "the amount of earnings credits the escrow companies received were expressly calculated based on the amount of customer funds that were placed in the trust account." Dkt. 78 at 17. While true, this fact does not overcome the legal conclusion that customers do not sustain an injury in fact when an escrow company receives earnings credits because "the earnings credits [do] not belong to the customers in the first place, but rather [are] incentives provided to the escrow companies to use as they pleased for any covered banking charges . . . ." *Washington Legal Foundation*, 271 F.3d at 860. Plaintiffs have failed to meet their burden of proof on the issue of whether they have suffered an "injury in fact" that is concrete and particularized. Therefore, the Court agrees with and adopts the reasoning of the cases cited above and grants Defendant's motion for summary judgment on Plaintiffs' earnings credits claims because Plaintiffs do not have standing to bring these claims.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion for Partial Summary Judgment on Plaintiffs' Earnings Credits Claims (Dkt. 54) is **GRANTED** and Defendant's Motion for Partial Summary Judgment on Reconveyance Fee Claims (Dkt. 55) is **GRANTED**.

The parties may file a joint brief regarding additional briefing on, and renoting of, the pending class certification motion (Dkts. 38 and 52). The brief shall not exceed ten pages and shall be filed no later than July 14, 2009. Otherwise, the Court will renote the motion to be considered on the Court's July 17, 2009 calendar.

DATED this 9th day of July, 2009.

BENJAMIN H. SETTLE
United States District Judge